Mr. Murphy is currently serving a sentence in the Federal Correctional Facility at Sheridan, Oregon. Despite the fact that there are three separate written opinions coming from the district court in this matter, I am somewhat puzzled by the court's reasoning and where the court finally ends up. I can't really say for sure that I fully understand the trial court's reasoning and exactly why the trial court is denying the suppression motion as well as subsequent motions to reconsider that I filed and argued in this case. In the district court's first opinion, the court agreed that Mr. Murphy did in fact have a reasonable expectation of privacy in the storage unit in question, unit number 17, that was in fact entered into twice and ultimately searched once the second time. Why did he have that expectation, counsel? Was he the lessee on this storage unit? He was not the lessee. This was an informal arrangement between Mr. Murphy and Mr. Roper, so his property right on interest is certainly not in writing. It was an arrangement he had with Mr. Roper. He had met Mr. Roper, I believe, while they were both incarcerated. What in the record tells us what the arrangement was? The arrangement was that... What in the record tells us? Well, the testimony of Mr. Murphy. Mr. Murphy testified that in fact Mr. Roper wanted him to stay there in exchange for work there. He didn't have to pay rent. And I can't point to the exact page where Mr. Murphy testified to that, but he did in fact, and it's part of my excerpts of record, Mr. Roper also testified that Mr. Murphy was allowed to be there, and he did in fact stay there, and in the record it is also indicated that the agents had information that Mr. Murphy was in fact staying there. Counsel, can I get a clarification? When you say there, I'm aware that there's at least Unit 14 and Unit 17. Which units were rented? Were they all contiguous? Were they out around the driveway? What are we talking about here? The storage units that were rented by Mr. Roper were Units 13, 14, 17, and 18. And where was it that your client was staying in terms of where his clothing, if you will, was stashed? The testimony adduced was that he was actually living in Unit 14. Number 14. There was also testimony, however, that he had stayed in Unit 17 and in fact stayed there the night before the entry and seizure. But the evidence really, I mean, giving it a fair reading, is that he was not living in Number 17. He was living in 14, but did have use and control over all of the other units that have... And where did the police, which unit was the locus of the contraband, if you will, the item that you want suppressed? Well, that would have been Unit Number 17. However, there wasn't a lot of testimony regarding this, but there were some photographs, and I think some photographs from a brand or maybe a little testimony that there were items, I believe, that were seized and taken out of Units 13 and 14 that the government could use in its prosecution. In other words, chemicals and some other items. But as far as the reported methamphetamine lab, that would have been in Unit 17. And then there was a unit that was directly connected with that, Unit 18, but nothing of evidentiary value was seized out of that. You can understand why I'm struggling with this, Counsel, because you've got, on the one hand, you've got 14, which I gather was the principal meth lab, where they initially found your client standing there. He says you can't go in. They get the permission of the guy who's actually the lessee of a unit that's not even contiguous, and your client is there by an informal arrangement. Why does he have a reasonable expectation of privacy in that setting? Well, first of all, the trial court did make that ruling, and the trial court found that he had keys to the unit. He was allowed to be in there. You know, I don't know exactly beyond that he was able to exclude others. And further, he did have property in that unit. There's been discussion that he did not have, but I think the government's underlying case rests on the fact that he had personal property in the unit, that being items associated with a reported methamphetamine lab. But he also seized personal papers of Mr. Murphy that were in the unit, and that was offered into evidence. And later on, the second set of hearings, there was testimony that he had alcohol in the unit. He also had a phone in there. And Mr. Roper was allowing him to use that unit, and he was, in fact, using it. And I don't think it was ever disputed that he wasn't using it. So I suppose the way that I would look at it would be similar to a dwelling, that being Unit 14, where he was actually living in perhaps a detached garage. Can you cite any case, U.S. Supreme Court case or any of our cases, that involve factual circumstances like this? Now, there are analogies, like Randolph, but are there any cases? I didn't see any that really came close to this one. No, Your Honor. I didn't think so. Thank you for your honest admission. Well, in any event, the Court did find that Mr. Murphy had a reasonable expectation of privacy and also found that the initial entry was a valid protective suite. And then the Court alluded to the fact that the agent had observed in plain view what was purported to be a methamphetamine lab. And what the Court seems to have done is just made an assumption because that viewing was made that exigent circumstances arose. And despite the consent issue, there was a legitimate search and seizure of property associated with that viewing of the purported methamphetamine lab. However, there's nothing on the record. Nothing was adduced at hearing, nor did the judge make fines, in fact, indicating any exigency that would have allowed the agent, after the protective suite and securing of the premises, to then go back in and start seizing evidence, which occurred in this case. So what the Court seems to do, and the opinion seems to morph somewhat, but first, second, third opinion, the Court keeps alluding to the fact that, well, the agent saw a purported methamphetamine lab and that somehow legitimizes the search and seizure of the property. Again, however, that sort of search is only valid and lawful if, in fact, on the record, it's articulated as to why immediate action of the agents was necessary to either prevent destruction of property or escape or to protect life. And in this case, there's no evidence whatsoever of that. And in fact, all you have here is an officer or agent outside a premises looking in and seeing contraband. And clearly, the law does not allow simply viewing contraband outside a premises as a basis to enter and secure and start searching and seizing evidence, which is what happened in this case. Do you have a minute and a half left? Do you want to save time for rebuttal? Yes, sir. It's my time limit. You have a minute and a half. Okay. And if you want to save time for rebuttal, you have a minute and a half for rebuttal. I think I better save that. Okay. Thank you, sir. Good morning. I'm Judith Harper. I represent the government in this case. Private living quarters is the term that the Supreme Court used in the sentence right before its holding in Randolph v. Georgia, Georgia v. Randolph. Are you suggesting you don't have an expectation of privacy in an office? I'm not suggesting that, Your Honor, but I think there's a heightened expectation of privacy in somebody's residence. But the Fourth Amendment applies. It doesn't have to be a home. I'm sorry? The Fourth Amendment applies to all places, not just to homes. That's true, Your Honor, but I believe that's true. You have an expectation of privacy in an automobile? That's true, Your Honor. In an office? Correct, Your Honor. Is there any – do you have any authority that suggests you don't have it in a storage locker? No, but I think it should be treated different by this Court than someone's residence. Is there any authority for that, or do you just think that? I think the authority is Georgia v. Randolph and how specific that ruling is. And Georgia v. Randolph, for the first time, suggests that there's a different Fourth Amendment approach to a house than to a car or a trailer or some other property? No, I think there's a long list of cases and case authority that describes the heightened expectation of privacy in someone's residence. And is there any that suggests that there's a lesser expectation of privacy in an automobile or an office or any other place? I think by virtue of the fact that there's a heightened expectation. Okay. I think cases is what I'm asking for. There's a list of cases that were discussed in Georgia v. Randolph. Well, I hope they're more authoritative than the case that you cite to us is coming from this Court that comes from the District Court of Georgia. There's a listing of cases in – What I'm referring to is your brief, which says, This Court said, and it turns out it's a District Court in Georgia. That's correct, Your Honor. Is there any explanation for that? That was an error, Your Honor. Did you advise us it was an error? I'm sorry? Did you advise us of that error? No, Your Honor. Well, it would be a good idea, if you make an error, to let us know. I would do that, Your Honor. That was a reference that was to the District Court of Georgia that made that ruling subsequent to Georgia v. Randolph. And this Court, I don't believe, has made any specific rulings with respect to that case. No, but if we read briefs, we assume that what you tell us is correct. I read a case that said this Court had addressed the issue. Yes, Your Honor. And then it turns out it's a District Court in Georgia that did it. Yes, Your Honor. The fact that the private living quarters in Georgia v. Randolph was the focus of the Supreme Court, I think, was the reason Judge Aiken distinguished the facts in U.S. v. Murphy from Georgia v. Randolph. The Court in that case, in Mr. Murphy's case, said that a residence should be considered different than a storage unit. And the Court pointed to specific facts in the record to support that ruling. But, counsel, for purposes of our analysis, as Judge Reinhart's mentioned, it really doesn't matter, does it, that this is an office or a warehouse or a residence insofar as this particular defendant is concerned. This is clearly somebody who doesn't have a lease. He's there, apparently, by the voluntary consent of the lessee. Correct. They're in a criminal enterprise together. He's got some clothing and other personal effects in various parts of the non-contiguous units. Our analysis is pretty much the same, is it not, as it would be for a car or a residence. I think that's true. However, I do think the Court in Georgia v. Randolph is very specific to address the fact that this is a residence. The Court uses the language, a person's home is his castle, a house gets special protection because it's the center of our private lives in focusing on why the Court is making the ruling the Court rules. Even if you take your line of thought, how does that help the government in this case? If this person, in this case the defendant, has personal goods there and it's his castle, why does that help you? I don't think it's his castle. Unit 14, I think, could be argued to be his castle, which is a separate place than Unit 17, where all the evidence was seized in this case. To me, this is more important than what you're talking about, which is the non-contiguity of these units. They are actually physically non-contiguous. They are. So would you address why you think that has import to us in our analysis? The fact that the residence The fact that the units 14 and 17 in particular are non-contiguous. Well, supposedly Mr. Murphy is staying at least at some period of time in Unit 14 and stores his personal belongings there. And 17 is completely separate. You have to go through a separate door to get to Unit 17.  He was authorized to be there. He was given a key to use it there. Mr. Roper testified at the hearing he wasn't authorized to be in Unit 17, that he was allowed to stay there for some period of time in Unit 14, but Mr. Roper 14 or 17? He was allowed to stay in 14 for a period of time and allowed to have access to the others, and he had a key to the others. Mr. Roper testified that he took that authority away. And the district court found that was not credible and rejected that testimony. The district court did find that that wasn't credible. And was that clearly erroneous? No, that was not clearly erroneous. All right. Then what's the relevance to what you're telling us? Well, the court did have some evidence that Mr. Roper was not – that Mr. Roper had some authority over Mr. Murphy and what Mr. Murphy was doing. And I think Mr. Murphy's own testimony was that Mr. Roper was in charge of these units. He didn't have the authority to kick him out or authority to limit what he could do in the storage units. And I think that's also relevant for the court's ruling and the court's – Well, that's true with all the units, isn't it? He had the authority. He had the right to let him use those units or not. 14, 17, he gave him keys to each of those units. He did have a key that worked for all those units. If Mr. Murphy and Mr. Roper were riding in a car that belonged to Mr. Roper, and Mr. Murphy had some meth in the trunk, and the police stopped Mr. Roper, they had a taillight out or something like that, and said, do you mind if I search the trunk? And Mr. Roper said, fine. And Mr. Murphy said, no. What would be our line of cases that would be helpful in that from your perspective? I think the court's analysis should be pretty much the same as in this case, that not only – I think the party's relationships and who has greater authority over the premises to be searched is another prong of the Georgia v. Randolph case. In the analogy that I gave, would Mr. Murphy have a reasonable right or a reasonable expectation of privacy in Mr. Roper's trunk? I don't believe so. Maybe in his own bag in the trunk, but not in the trunk of Mr. Roper's car. That's interesting. So if he had a bag in the trunk, that would be different. I think if he had a bag in the trunk that was clearly his and labeled his and it was a closed container, it would be a different story. Did any of that happen in this case? No, Your Honor. In Unit 17, were any items that belonged to Mr. Murphy clearly labeled or were they in a bag or anything of that nature? They weren't disclosed or closed up in any way. They were right out the open. Where does this clearly labeled, closed up theory come from? What case? The clearly – oh. Your theory. That there's – It has to be clearly labeled, closed up bag to have an expectation of privacy. What case does that come from? I don't have a case to cite to the court. These are all your theories you're advancing today as to how we ought to rewrite the law. Yes, Your Honor. I think the focus then should be the authority of, you know, who has greater authority over the item to be searched. You know, the court in Randolph v. Murphy is – Then you're saying that if you stay at somebody's house overnight and the person who owns the house gives consent, he can override your refusal to give consent. Isn't that contrary to the cases that give the overnight guest the expectation of privacy? I think it's a different situation when there's – Well, you said it's who has the greater authority. I'm sorry? You said it's who has the greater authority. I think there is a line of cases that talk about the person having the greater authority, having the ability to, to control the consent. I mean, I think this Court discussed that in the Mourning case, that the Court looked at, you know, people staying at a house and a person having consent, you know, giving consent to search over a house versus another roommate who had consent to search, who gave consent to search a house. And I think the Court is very specific in Georgia v. Randolph that you've got two co-tenants, people with equal authority over the residence. Right. That's what they were talking about. That was the case before them, and that's what they were describing. I'm sorry? I said that was the case before them, and that's what they were describing. They were describing – right. The case before them. They were two co-tenants. Did the district court in this case make any finding as to the – whether the two Murphy and Roper were co-tenants or? I don't believe the Court made a particular finding on that. I think the Court's ruling was that Mr. Murphy didn't – she had a hard time saying that Mr. Murphy was a co-tenant, I think, is what the Court said in her ruling, that he didn't live in Unit 17, and it was questionable whether he stored any personal belongings there. So the Court does make that brief distinction that Mr. Murphy was not a co-tenant of that particular unit. So, yes. Mr. – Your time has expired. Thank you, Your Honor. I cancel your minute and a half for rebuttal. Case just argued will be submitted. The next case for oral argument is United States v. Heurig.
judges: Goodwin, Reinhardt, M. Smith